## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Dim Njaka,

                Plaintiff,

        v.

Wright County; City of Rockford;
Deputy Lance Hellerud; and Douglas
Richard Duda,

                Defendants.

Civil No. 07-1435 (JNE / SRN)


**REPORT & RECOMMENDATION**

---

Dim Njaka, *Pro Se*.

Jason M. Hiveley, Iverson Reuvers, 9321 Ensign Avenue South, Bloomington, MN, 55438, for Defendants City of Rockford and Douglas Duda.

Mary A. Rice, Fafinski Mark & Johnson, PA, 400 Flagship Corporate Center, 775 Prairie Center Drive, Eden Prairie, MN 55344, for Defendants Wright County and Lance Hellerud.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on Defendants' Motion To Dismiss (Doc. No. 8), Defendants' Motion To Dismiss Complaint (Doc. No. 26), and Defendants' Motion To Dismiss Amended Complaint (Doc. No. 32), as well as Plaintiff's Motion for Default Judgment (Doc. No. 19) and Motion for Entry of Default (Doc. No. 39). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, the Court recommends that Wright County and Deputy Hellerud's motion to dismiss the Complaint be granted in part and denied in part, that the City of Rockford and Mr. Duda's motion to dismiss be granted, that Defendants' motions to dismiss the Amended Complaint be denied as moot, and that Plaintiff's motions for default judgment and to amend his Complaint be denied.

## I.      FACTUAL AND PROCEDURAL HISTORY

This civil rights action arises from Plaintiff's chance encounter with an employee of the

City of Rockford and then with Wright County law enforcement officials, who were dispatched

in response to a call by that employee after he became suspicious of Plaintiff's behavior.  In his

Complaint, Plaintiff–who is a black male–asserts that he encountered Defendant Douglas Duda

while walking on Utility Drive in Rockford, Minnesota, and that the two engaged in a

conversation that at least began innocuously enough.  (Doc. No. 1, ¶¶ 8-11.)  Mr. Duda, an

employee of Defendant City of Rockford, was working near a water treatment facility.  After he

became suspicious of Plaintiff's behavior regarding the treatment plant, Mr. Duda called the

authorities.

Wright County Deputy Sheriffs, including Defendant Deputy Lance Hellerud, responded.

They stopped and questioned Plaintiff and eventually conducted a pat-down or frisk search of

Plaintiff, who alleges they improperly searched his groin area.  After questioning Plaintiff, they

let him go and no charges were filed.

In March 2007, Plaintiff filed suit against the City of Rockford and Mr. Duda, as well as

against Deputy Hellerud and Wright County.  (Doc. No. 1.)[1]  Plaintiff's Complaint denominates

two Counts:  (1) a claim under Section 1983 of Title 42, and (2) a claim under Section 1981 of

Title 42.  His Section 1983 claim references violations of the First and Fourteenth Amendments,

claiming that Defendants discriminated against him on the basis of his race and subjected him to

sexual harassment via an unreasonable search and seizure in violation of the Fourth Amendment.

(Doc. No. 1, ¶¶ 31-32.)  His Section 1981 claim asserts a violation of the Fourteenth Amendment

---

[1] Plaintiff had first filed an administrative complaint with the Wright County Sheriff's
Office and Lt. Joe Hagerty was assigned to conduct the investigation.  Lt. Hagerty concluded
that nothing improper or illegal occurred.

based on his race, specifically claiming that Defendants violated his "right to be free from sexual harassment." (Doc. No. 1, ¶¶ 36-37.) Each Count, as well as other portions of his Complaint, also cites Sections 1982, 1985, 1986 and 1988 of Title 42.

On November 7, 2007, Defendants Duda and the City of Rockford moved to dismiss. (Doc. No. 8.) On November 8, Defendants Deputy Hellerud and Wright County filed their Answer. (Doc. No. 14.) Plaintiff then moved on November 26 for default judgment against all four Defendants (arguing that they failed to timely respond to his Complaint), and for leave to file an amended complaint that named additional defendants and added additional claims. (Doc. No. 19.) In December 2007, Deputy Hellerud and Wright County then moved to dismiss the Complaint. (Doc. No. 26.) They simultaneously moved to dismiss the amended complaint. (Doc. No. 32.) Finally, Plaintiff moved for entry of default pursuant to Rule 55(a) arguing again that Defendants' responses were untimely. (Doc. No. 39.)

## II.   DISCUSSION

Before addressing the Defendants' motions to dismiss, the Court must consider Plaintiff's motions for default judgment based on the alleged failure of Defendants to respond to Plaintiff's Complaint within twenty days.

### A.   Defendants Did Not Fail To Timely Respond To The Complaint

Plaintiff first contends that he is entitled to a default judgment pursuant to Rule 55 because the Defendants failed to timely file their Answers or Rule 12 motions. (Doc. Nos. 19 & 39.)[2] Plaintiff claims service of his Complaint was effective October 17, thus triggering the

---

[2] In a "Supplemental Memorandum" in support of his motion for judgment by default, Plaintiff also seeks Rule 11 sanctions, although without having properly moved for such, against Defendants for various alleged infractions ranging from filing a motion to dismiss rather than a response to Plaintiff's motion for default and filing a motion to dismiss the amended complaint after filing a motion to dismiss the original complaint, to supporting their arguments with a DVD

twenty-day period for responding, such that the deadline–according to his computation–would have been November 5, 2007.  Wright County and Deputy Hellerud filed an Answer on November 8, 2007.  The City of Rockford and Mr. Duda filed a motion to dismiss on November 7, 2007.

But Plaintiff served Defendants pursuant to Rule 4(c)(2), which authorizes service by a United States Marshal.  Here, the Marshal mailed copies of the Complaint to each of the Defendants on October 17, 2007.  Plaintiff relies on Rule 5(b)(2)(B) to contend that "service by mail is complete on mailing."  (Doc. No. 21 at 2.)  But Rule 5(b)(2)(B) governs "[s]ervice under Rule 5(a)," which applies only to pleadings "subsequent to the original complaint."  Fed. R. Civ. P. 5(a), (b) (emphasis added).  Thus service of the Complaint by mail was not effective on October 17, 2007, so as to trigger the twenty-day deadline.

Under Rule 4, service of the Complaint on both the municipal and individual defendants may be effected by the means authorized by state law.  Fed. R. Civ. P. 4(e)(1), (j)(2) (providing that service on an individual may be accomplished pursuant to state law, and that service on a municipal corporation may be accomplished as provided under applicable state law).  Under Minnesota law, "service may be made by mailing" the summons and complaint along with a notice and acknowledgment form.  Minn. R. Civ. P. 4.05.

Here, the Marshal's Service mailed the Summons and Complaint to each of the four defendants on October 17, 2007.  Each Defendant executed and returned the Notice and

---

(transferred from the VHS video recording made from the officer's vehicles) that Plaintiff alleges is missing several minutes of the officer's encounter with Plaintiff.  (Doc. No. 55.)  Even if Plaintiff would have properly moved for Rule 11 sanctions, the Court would deny the motion. The Court notes, however, that spoliation of evidence is a serious allegation that will not be taken lightly.  But at this early juncture in the proceedings, it is premature to address much less resolve such allegations.

Acknowledgment of Receipt of Summons and Complaint, although on different dates.  The twenty-day period for responding begins on the date the defendant executes the acknowledgment form, not the date the Complaint is mailed.  Madden v. Cleland, 105 F.R.D. 520, 524-25 (N.D. Ga. 1985) (construing 1983 version of Rule 4 that authorized service of Complaint by mail).

Wright County executed the acknowledgment form on October 22, 2007.  Deputy Hellerud executed and returned his form but without dating it.  Nevertheless, the Marshal indicated a date of service of October 25, 2007.  Thus Wright County had twenty days from October 22, 2007, to file an Answer or a Rule 12 motion to dismiss.  Fed. R. Civ. P. 12(a), (b).  The deadline for Wright County was thus November 13, 2007 (because November 11 was a Sunday and November 12 was Veterans Day).  See Fed. R. Civ. P. 6(a) (providing for method of computation and for exclusion of Saturday, Sunday and legal holidays when "the last day of the period").  With respect to Deputy Hellerud, the Court will accept the Marshal's indication of October 25, 2007, as the date of service and thus November 14, 2007, was the due date for his response.  Because they filed and served their Answer on November 8, 2007, there is no basis to grant Plaintiff default judgment pursuant to Rule 55.

The City of Rockford acknowledged receipt by signing and returning the form on October 18, 2007, and Mr. Duda did likewise on October 23, 2007.  Thus the City of Rockford and Duda had twenty days from October 18, and October 23, 2007, respectively, to file their Answer or a Rule 12 motion to dismiss.  Fed. R. Civ. P. 12(a), (b).  The deadline was thus November 7, 2007, for Wright County and November 13, 2007, for Duda (because November 12 was Veterans Day).  See Fed. R. Civ. P. 6(a).  Because they filed and served their motion to dismiss on November 7, 2007, there is no basis to grant Plaintiff default judgment against them

either.[3]

**B.      Plaintiff Has Stated a Section 1983 Claim Against Deputy Hellerud, But Not Against Wright County**

Defendants Wright County and Deputy Lance Hellerud move to dismiss the Complaint, but do so under Rule 12(c) (as they had already filed their Answer).  (Doc. No. 26.)  The federal courts employ a "fairly restrictive standard" to such motions under which, like a motion to dismiss under Rule 12(b)(6), "all of the well pleaded factual allegations in the [non-movant's] pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false."  5C Wright and Miller, Federal Practice and Procedure § 1368 (3d ed. 2004).  In effect, the standard is similar to that governing a motion to dismiss under Rule 12(b)(6).

Under the "liberal system of 'notice pleading' set up by the Federal Rules," a complaint need "include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (quoting Rule 8(a)(2) and rejecting heightened pleading standard except as expressly required by the federal rules).[4]

> "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

In fact, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff need not even

---

[3] Plaintiff seems to construe the requirement that a defendant respond "within 20 days after being served with the summons and complaint," Fed. R. Civ. P. 12(a), to require service no later than the nineteenth day–i.e, to exclude the twentieth day.  But Rule 6(a) includes "the last day of the period" (unless extended for weekends and holidays), Fed. R. Civ. P. 6(a), and thus service on the twentieth day would be within the applicable period.

[4] The only exceptions are for averments of fraud and mistake.  Fed. R. Civ. P. 9(b).

plead a *prima facie* case.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-11 (2002) ("The

prima facie case . . . is an evidentiary standard, not a pleading requirement".).[5]  Rule 8(a)(2)'s

simplified pleading standard "relies on liberal discovery rules and summary judgment motions to

define disputed facts and issues and to dispose of unmeritorious claims."  Id. at 512.  "If a

pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant

can move for a more definite statement under Rule 12(e) before responding" and "claims lacking

merit may be dealt with through summary judgment under Rule 56."  Id. at 514.

As the Eighth Circuit has explained, "[a] complaint should not be dismissed, nor a cause

of action pled therein ignored, merely because it does not state with precision all elements that

give rise to a legal basis for recovery."  Smith v. Ouachita Tech. College, 337 F.3d 1079, 1080

(8th Cir. 2003) (reversing dismissal of civil rights claim).  In fact, a Plaintiff is not required to

plead the correct legal theory, or indeed any legal theory at all, just a short and plain statement of

the facts, and the Court must deny a Rule 12(b)(6) motion if it determines the Plaintiff could

recover under "any possible legal theory" consistent with those facts.  5B Wright & Miller,

Federal Practice and Procedure § 1357, at 676 (3d ed. 2004).

The United States Supreme Court has recently abrogated the language in Conley v.

Gibson, 355 U.S. 41 (1957), that a "complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief."  Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct.

1955, 1968-69 (2007).  The "no set of facts" phrasing should not be read literally to permit

pleadings that "left open the possibility that a plaintiff might later establish some 'set of

---

[5] Although Leatherman concerned only municipal liability under Monell, the Supreme
Court clarified in Swierkiewicz that "Rule 8(a)'s simplified pleading standard applies to all civil
actions" except for "averments of fraud or mistake."  Id. at 513.

[undisclosed] facts' to support recovery." <u>Id.</u> at ___, 127 S. Ct. at 1968.  Rather, the "accepted

pleading standard" is that "once a claim has been stated adequately, it may be supported by

showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> at ___, 127 S. Ct.

at 1969.

But the Supreme Court did not retreat from its holdings in <u>Leatherman</u>.  <u>See id.</u> at ___,

127 S. Ct. at 1973 n.14 (relying on <u>Leatherman</u>).  The Court simply "retired" the "no set of

facts" phrasing as "an incomplete, negative gloss on an accepted pleading standard:  once a

claim has been stated adequately, it may be supported by showing any set of facts consistent

with the allegations in the complaint." <u>Id.</u> at ___, 127 S. Ct. at 1969.

Moreover, even after <u>Twombly</u> the Court still adheres to the minimal pleading standard

reflected in Rule 8(a)(2), which "requires only 'a short and plain statement of the claim showing

that the pleader is entitled to relief,'" thereby reaffirming this basic pleading principle that was

originally stated in <u>Conley v. Gibson</u>:

> Specific facts are not necessary; the statement need only "'give the defendant fair
> notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell
> Atlantic Corp. v. Twombly</u>, 550 U.S. ___, ___, 127 S. Ct. 1955, . . . (2007) . . .
> (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, . . . (1957)).

<u>Erickson v. Pardus</u>, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007).

Finally, the Court recognizes that Plaintiff is proceeding *pro se* and therefore is entitled

to certain leeway in his pleadings.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (stating that

"allegations of the pro se complaint" are held "to less stringent standards"); <u>Stringer v. St. James

R-1 School District</u>, 446 F.3d 799, 802 (8th Cir. 2006) (construing *pro se* complaint liberally).

Here, Defendants move for dismissal of both Count I, which is based on Section 1983,

and Count II, which Plaintiff bases on Section 1981.[6]

### 1.    Plaintiff Has Not Alleged A Proper Section 1981 Claim

With respect to Count II, which claims a violation of Plaintiff's rights under Section 1981, it is clear that no such claim can be maintained here.  While Section 1981 declares certain rights, it does not expressly provide for any damages cause of action against those who violate those rights.  Jett v. Dallas Ind. School Dist., 491 U.S. 701, 720-21 (1989).  Thus, whatever claim might exist here for a deprivation of rights guaranteed by Section 1981–an action for damages against state actors–must be brought under Section 1983.  Id. at 731-32.

Putting aside this formal defect in Plaintiff's Complaint, it is clear that the facts alleged here could not support any claim for a deprivation of rights under Section 1981.  Section 1981 prohibits intentional discrimination on the basis of race with respect to any contractual relationship, among other things.[7]  Thus "[a]ny claim under [the contract provision of] § 1981 . .

---

[6]  Although the two counts of Plaintiffs' Complaint assert claims under Section 1981 and Section 1983, they each also reference Sections 1982, 1985, 1986 and 1988, as does his request for relief.  Section 1982 addresses discrimination in terms of real and personal property.  42 U.S.C. § 1982.  But the Complaint discloses no allegations of any deprivation of any form of property rights.  The parties' dispute, or misunderstanding, over whether the nature of the road Plaintiff was walking on–Plaintiff thought he was on a public street, while Mr. Duda believed Plaintiff was trespassing on private property–fails to implicate a property interest protected by Section 1982.  Section 1985 addresses conspiracies to interfere with civil rights.  42 U.S.C. § 1985; Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1429 (8th Cir. 1986) (delineating five types of conspiracies prohibited by Section 1985).  Here, however, there are no allegations of a conspiracy that could support a Section 1985 claim.  Section 1986 is confined to actions against those who neglect or refuse to prevent Section 1985 conspiracies.  42 U.S.C. § 1986.  But again, because there is no basis for a Section 1985 claim, there also can be no claim under Section 1986.  Section 1988 does not create any substantive civil rights, but rather only addresses the applicability of statutory and common law and authorizes the recovery of attorneys fees.  42 U.S.C. § 1988.  Accordingly, even extending Plaintiff the liberal construction of his Complaint that is due a *pro se* civil rights litigant, the Court concludes that it does not properly implicate Sections 1982, 1985, 1986, or, for purposes of substantive rights, Section 1988.

[7]  Relying on Domino's Pizza, Inc. v. McDonald, 546 U.S. 470 (2006), Wright County and Deputy Hellerud argue that Section 1981 is confined to contractual relationships.  (Mem. at

. must initially identify an impaired 'contractual relationship,' . . . under which the plaintiff has rights." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006).  But here, the Complaint discloses no such contractual relationship of any kind.  Plaintiff's encounter with Defendants was entirely fortuitous and in no way implicates any consensual transaction or agreement.

Nevertheless, Count II alleges violations of Plaintiff's rights under other provisions of federal law that could be redressed in a Section 1983 action.  First, it alleges a violation of the Fourteenth Amendment, but one that would appear to be coincident with the equal protection claim brought under Count I.  Likewise, Count II also alleges a right to be free from sexual harassment that would appear entirely repetitive of the Fourth Amendment unreasonable search claim he articulates in Count I.  See Graham v. Connor, 490 U.S. 386, 388 (1989) (holding that claims that officers "used excessive force in the course making an arrest, investigatory stop, or other seizure' of [plaintiff's] person" are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard").  In short, the substance of his claim of Count II is thus entirely subsumed under the Section 1983 claim of Count I.

### 2.   Plaintiff Has Alleged A Section 1983 Claim Against Deputy Hellerud

Section 1983 provides for liability in an action at law against any person who, under

---

10.)  But Section 1981 also plainly prohibits racial discrimination with respect to (1) the right of equal access to the judicial process "to sue, be parties, [and] give evidence," (2) the "full and equal benefit of all laws and proceedings for the security of persons and property," and (3) subjection "to like punishments, pains, penalties, taxes, licenses and exactions of every kind." 42 U.S.C. § 1981.  See generally 2 Cook & Sobieski, Civil Rights Actions § 5.03 (outlining the "four distinct interests which are subject to protection" under Section 1981).  Because the facts in Domino's Pizza implicated only the contracts clause of Section 1981, the Supreme Court addressed only contractual relationships; the Court did not hold that Section 1981 concerns discrimination only with respect to contracts.  Nevertheless, nothing here implicates any of the other three interests of Section 1981.

color of State law, deprives any citizen "of any rights, privileges, or immunities secured by" federal law.  42 U.S.C. § 1983; see Graham v. Connor, 490 U.S. 386, 393-94 (1989) (noting that Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred'").  Thus, a Section 1983 claim presents questions regarding its "'two essential elements'"–"'(1) whether the conduct complained of was committed by person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.'" Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1426 (8th Cir. 1986) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981)).

Here, Plaintiff's Complaint (liberally construed) alleges violations of rights under the following provisions:  (1) First Amendment, (2) Fourteenth Amendment (equal protection), and (3) Fourth Amendment (unreasonable / excessive search of his groin).  (Doc. No. 1, ¶¶ 31-32, 36-37.)

### (a)      First Amendment

Plaintiff alleges that Defendants denied him his "constitutional rights under the First . . . Amendment" (Doc. No. 1, ¶ 31), but fails to elaborate on how any of the protections afforded under that provision are implicated here.  The Court is unable to discern any allegations of a deprivation of rights of religion, free speech, the press, assembly or to petition the Government. In short, Plaintiff has not pled any viable First Amendment claim.

### (b)      Fourteenth Amendment

Plaintiff's Fourteenth Amendment claim is premised on an alleged denial of equal protection–essentially that Deputy Hellerud treated Plaintiff, who is black, differently than he treats white suspects.  (Doc. No. 1, ¶ 26.)  Defendants argue that "an allegedly improper

11

investigatory stop and frisk combined with a difference in race between the person stopped and the officer is insufficient to create a prima facie case of race discrimination."  (Mem. at 5 (relying on Johnson v. Crooks, 326 F.3d 995, 1000 (8th Cir. 2003)).)

Granted, to prevail on an equal protection claim against law enforcement officials, a civil rights plaintiff "must prove that [the officer] exercised his discretion to enforce the traffic laws on account of [plaintiff's] race, which required proof of both discriminatory effect and discriminatory purpose." Johnson v. Crooks, 326 F.3d 995, 1000 (8th Cir. 2003).  In Johnson, the plaintiff did not survive summary judgment because she failed to present any evidence "that [the officer] does not stop non-African Americans under similar circumstances."  Id. (reversing denial of summary judgment).

Here, however, the issue is simply whether Plaintiff has sufficiently pled a claim for equal protection, not whether he has presented sufficient evidence in opposition to summary judgment.  Plaintiff alleged that Defendants engaged in "systemic discriminatory practices" based on racial animus.  (Doc. No. 1, ¶¶ 1, 17 (apparently alleging that Defendant Duda called the police based on Plaintiff's race).)  He further alleged that Defendant Hellerud engaged in the particular search that he conducted based on Plaintiff's "lowly status as a black male in a society that has low regard for minorities."  (Id., ¶ 26.)

Accordingly, Plaintiff has stated a cognizable claim for violation of his equal protection rights in the context of being stopped and questioned by law enforcement officials.[8]

### (c)    Fourth Amendment

As noted above, claims that "law enforcement officials used excessive force in the course

---

[8]  The Court takes no position, of course, on whether Plaintiff would be able to survive a motion for summary judgment on such a claim.

of making an arrest, investigatory stop, or other 'seizure'" are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." Graham v. Connor, 490 U.S. 386, 388 (1989).[9]  As relevant here, the Fourth Amendment generally prohibits unreasonable searches and seizures.  U.S. Const. amend. IV.

### (i)    Individual Liability

Here, Deputy Hellerud and another officer responded to a call from Mr. Duda that Plaintiff was engaging in suspicious activities and located him walking on a street near where Plaintiff first encountered Mr. Duda.

Defendants first assert that if "there was no detention, there is clearly no Fourth Amendment issue." (Mem. at 6.)  They claim that "[s]imply questioning someone does not implicate the Fourth Amendment."  (Id.)  They also argue "it is not clear" that the interaction "was without the consent of the Plaintiff."  (Id.)  But the Complaint alleges that "[w]hen plaintiff entered Iris Lane, two county squad cars restricted his movement" and further alleges that Plaintiff disputed to the officers Mr. Duda's accusation of him being a "terrorist."  (Doc. No. 1, ¶¶ 20-22.)  Thus for purposes of a motion to dismiss, this Court assumes that Plaintiff was detained for a Terry stop.[10]

---

[9] Because Plaintiff was never arrested, there is no issue of whether his rights as a pretrial detainee were violated.

[10] Unlike many situations resulting in Terry stops, here the officers did not personally observe any of Plaintiff's "suspicious" activities, but rather responded to a police dispatcher's call that Plaintiff was a suspected terrorist.  The sole source of that information apparently was Mr. Duda.  In short, the investigating officers were relying entirely on the information they received through the dispatcher, who, in turn, was relying on the information received from Mr. Duda.  Thus the question becomes whether the officers were objectively justified in relying on that information to conclude that Plaintiff might be armed or otherwise dangerous so as to justify the subsequent stop and ensuing search.  See generally 4 Wayne R. LaFave, Search and Seizure §§ 9.5(h), 9.5(i).  This is not a case where the Complaint cannot be read to state a claim that the officers lacked a sufficient "reasonable suspicion" to conduct a Terry stop.  See Wilson v.

In any event, these arguments of Defendants simply address only one component of the Fourth Amendment issue, whether the stop was valid.  After Deputy Hellerud stopped Plaintiff, he then searched him.  Here, assuming that the officers, who were responding to a call that a suspected terrorist might be threatening the treatment plant, were entitled to conduct a <u>Terry</u> stop–a brief "seizure" of a suspect for the purposes of questioning and a limited search of his or her person to remove any weapons, <u>Terry v. Ohio</u>, 392 U.S. 1 (1968)–the question becomes whether the scope of the search that they conducted exceeded its permissible bounds.

The essence of Plaintiff's Complaint is the allegation that the officer's frisk search violated Plaintiff's "genital area as Deputy Hellerud deliberately pinched his testicle while patting him down."  (Doc. No. 1, ¶ 24.)[11]  On a motion to dismiss, the Court must assume the Plaintiff's factual allegations "are true (even if doubtful in fact)."  <u>Bell Atlantic Corp.</u>, ___ U.S.

_____

<u>Schnettler</u>, 365 U.S. 381, 383 (1961) (holding that complaint that failed to allege that arrest "was made without probable cause" was "reason alone" to dismiss complaint, as courts could not assume as much), <u>quoted in</u>, <u>Bell Atlantic Corp.</u>, ___ U.S. at ___, 127 S. Ct. at 1969 n.8.

[11]  Accordingly, taking the allegations as true, the Court cannot accept Defendants' characterization of the search as "by its nature *de minimus*."  (Mem. at 5.)  Defendants' reliance on <u>Riley v. Dorton</u>, 115 F.3d 1159 (4th Cir. 1997), is misplaced, because the plaintiff there had been arrested and the court ruled that his claims of alleged injury were therefore not subject to the Fourth Amendment, which governs only "'the initial decision to detain an accused,'" but rather to the Fourteenth Amendment's Due Process Clause, which governs "the conditions of confinement after that decision has been made." <u>Id.</u> at 1161-63.  Moreover, there was no allegation of the officers having searched plaintiff's groin area.  <u>See id.</u> at 1161 (and noting lack of any "medical evidence that [officer] ever inflicted any injury on [plaintiff]").  Defendants' reliance on <u>Allmond v. Alexandria Sheriff's Dept.</u>, 2002 WL 32514956 (E.D. Va. June 4, 2002), is likewise misplaced, as there the officer, after plaintiff's groin area triggered a magnetometer alarm, performed a "manual search of plaintiff's groin area with the back of his hand coming into contact with plaintiff's genitals." <u>Id.</u> at *3.  In any event, in light of the question that arose at the hearing on this matter as to exactly what occurred during the search of Plaintiff, the Court is not able at this juncture to conclude that the injury alleged here was merely *de minimus.*

at ___, 127 S. Ct. at 1965.[12]

The parameters of a <u>Terry</u> search–a limited frisk or pat-down of the suspect's exterior clothing to determine if the suspect is armed–are restricted:  "The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." <u>Terry v. Ohio</u>, 392 U.S. 1, 19 (1968).  The scope and extent of the search is subject to an objective "reasonableness" test:

> [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . .  And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?

<u>Id.</u> at 21.

"A search for weapons in the absence of probable cause to arrest, however, . . . must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a 'full' search, even though it remains a serious intrusion."  <u>Id.</u> at 25-26.  Although each individual case must be assessed in light of its own "concrete factual circumstances," "[t]he sole justification of the search in [such a] situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer."  <u>Id.</u> at 29.

The "'narrow scope'" of the <u>Terry</u> exception to probable cause is one the Supreme Court

---

[12]   The Court notes, however, that Plaintiff's assertions as to the officer's motivations for conducting the particular search at issue (Doc. No. 1, ¶¶ 25-26 (claiming that search was a "homosexual harassing 'come-on'" and a "homosexual fantasy")), lack any factual basis.  Such speculative attributions of motivation are also highly implausible particularly in light of the fact that the search was conducted in front of another officer–a female Deputy–and was videotaped by those officers.

"'has been careful to maintain.'"   Ybarra v. Illinois, 444 U.S. 85, 93 (1979) (noting it only

permits an officer, "for his own protection and safety," to "conduct a patdown to find weapons

that he reasonable believes or suspects are then in the possession of the person he has accosted").

"Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or

indeed, any search whatever for anything but weapons." Id. at 93-94.  Thus one prominent

commentator has noted that

> there is no reason to cover every square inch of the suspect's body.  The need is
> only to find implements which could readily be grasped by the suspect during the
> brief face-to-face encounter, not to uncover items which are cleverly concealed
> and which could be brought out only with considerable delay and difficulty.

Wayne R. LaFave, Search and Seizure § 9.6(b), at 660 (4th ed. 2004).

The Eighth Circuit appears to have addressed the propriety of a search of the crotch area

only in the context of a warrant that expressly authorized the search of the defendant's "home

and person for drugs and firearms." United States v. Williams, 477 F.3 974, 975 (8th Cir. 2007).

The Eighth Circuit upheld a search by an officer who "opened [defendant's] pants, reached

inside [his] underwear, and retrieved a large amount of crack and powder cocaine near

[defendant's] genitals." Id.  But this search occurred only after "[a] pat-down search revealed

something inside [defendant's] pants."  Moreover, as the court pointed out, "[t]he police

possessed a warrant authorizing them to search [defendant's] person for drugs and firearms, and

[the] initial pat-down produced specific probable cause that [defendant] was hiding something

inside his pants." Id.

Here, in contrast, there was no warrant authorizing a search of Plaintiff's person.

Moreover, the warrant at issue in Williams authorized a search for weapons and drugs.  It is well

known that suspects often conceal drugs near their crotch.  E.g. United States v. Rodney, 956

F.2d 295, 297 (D.C. Cir. 1992) (noting that "[d]ealers frequently hide drugs near their genitals").

16

Deputy Hellerud, however, was conducting a warrantless <u>Terry</u> search, which by definition is limited to a pat-down for weapons.

Other Circuits have addressed the constitutionality of crotch searches, but each decision is distinguishable.  In <u>United States v. Ashley</u>, 37 F.3d 678 (D.C. Cir. 1994), the investigating officer–who performed a consensual search that the court deemed equivalent to a "'traditional frisk search,' including a 'sweeping motion' over the outer garments of the crotch area"–"did not touch Ashley's genitals while removing the cocaine from his underwear" while performing a second search after the initial pat-down disclosed a hard object that the officer believed was narcotics.  <u>Id.</u> at 680.

The <u>Ashley</u> decision was based in part on the D.C. Circuit's earlier decision in <u>United States v. Rodney</u>, 956 F.2d 295 (D.C. Cir. 1992).  In <u>Rodney</u>, the court also addressed a consensual search, which the court construed as a consensual "search of his *body* for *drugs*."  <u>Id.</u> at 297 (noting that "[d]ealers frequently hide drugs near their genitals").  The court upheld the search as it "was not unusually intrusive, at least relative to body searches generally.  It involved a continuous sweeping motion over [defendant's] outer garments, including the trousers covering his crotch area."  <u>Id.</u> at 298 (2-1 decision).[13]

_____

[13]  In <u>Rodney</u>, the majority noted that the "search was no more invasive than the typical pat-down frisk for weapons described by the Supreme Court" in <u>Terry</u>.  <u>Rodney</u>, 965 F.2d at 298 (quoting <u>Terry</u>, 392 U.S. at 17 n.13).  But in <u>Terry</u>, the Court's reference to a "thorough search" that included "the groin and area about the testicles" was in support of its general observation that a search is <u>not</u> "a 'petty indignity'" but rather "a serious intrusion upon the sanctity of the person, . . . [one that] is not to be undertaken lightly."  392 U.S. at 16-17.  The Court quoted an article that described a "thorough search" that included "the groin and area about the testicles."  <u>Id.</u> at 17 n.13.  But as a leading commentator has noted, the Court "failed to note that the procedures being described [in that article] are those used after *arrest* and before the arrested person is taken to the station, a situation in which the need is quite different than that where no custodial arrest has been made."  4 Wayne R. LaFave, <u>Search and Seizure</u> § 9.6(b), at 659 & n.200 (4th ed. 2004) (noting that authors of article on which Court relied "make it absolutely clear that the procedures described are for use when a suspect has been placed under arrest").

The Eleventh Circuit addressed such searches in <u>United States v. Blake</u>, 888 F.2d 795 (11th Cir. 1989).  The court held that the suspects' consent to a search of "their 'persons'" for drugs "could not, under the circumstances, be construed as authorization for the officers to touch their genitals in the middle of a public area in the Fort Lauderdale airport."  <u>Id.</u> at 800 (noting that "even in the context of the prison setting where privacy rights are viewed as being on a lesser scale, other courts have noted the increased level of intrusion when a frisk search of the genital region is involved").

Here, on the facts as alleged–that the investigating officer "pinched" Plaintiff's testicle while patting him down (Doc. No. 1, ¶ 24)–the Complaint states a claim for the excessive use of force in conducting a <u>Terry</u> search.[14]

### (ii)    Municipal Liability

Defendants also claim that the Complaint must be dismissed with respect to Wright County because the county "cannot be held liable under 42 U.S.C. 1983 based on any theory of vicarious liability."  (Mem. at 4 (citing <u>Monell v. Dept. of Soc. Servs,</u>, 436 U.S. 658 (1978).) Granted, Wright County cannot be held liable under *respondeat superior* for the actions of its employee, Defendant Duda–that is, it "cannot be held liable *solely* because it employs a tortfeasor"–but it can be liable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or a "'custom' even though such a custom has not

---

Moreover, such a "thorough search" of the groin is plainly inconsistent with one of the central holdings of <u>Terry</u>–that a warrantless search based on less than probable cause is strictly limited to a pat-down of the exterior of the subject's clothing for weapons.

[14] Again, the Court takes no position on whether Plaintiff would be able to survive a motion for summary judgment on such a claim.

received [such] formal approval."  <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 690-91

(1978) (emphasis in original).

Moreover, the issue here is simply whether to dismiss under Rule 12(b)(6).  To state a

claim against Wright County, Plaintiff need not meet any heightened pleading standard.

<u>Leatherman v. Tarrant County Narcotics Intell. and Coord. Unit</u>, 507 U.S. 163, 168 (1993)

(reversing dismissal of claim against county and municipal corporations where Complaint

asserted they failed "to adequately train the police officers involved").

The Eighth Circuit has ruled that a plaintiff in a civil rights action against a municipality

need not

> plead the specific existence of an unconstitutional policy or custom.  When a
> complaint is filed, a plaintiff may not be privy to the facts necessary to accurately
> describe or identify any policies or customs which may have caused the
> deprivation of a constitutional right.  Moreover, such a holding would disregard
> the liberality of Fed. R. Civ. P. 8(a)(2) which requires merely "a short and plain
> statement of the claim showing that the pleader is entitled to relief."

<u>Doe v. The School District of the City of Norfolk</u>, 340 F.3d 605, 614 (8th Cir. 2003).

Here, however, the Complaint not only contains no express allegations of a municipal

policy or custom, it also lacks any "allegation, reference, or language by which one could begin

to draw an inference that the conduct complained of, . . ., resulted from an unconstitutional

policy or custom."  <u>Id.</u>  "At a minimum, a complaint must allege facts which would support the

existence of an unconstitutional policy or custom."  <u>Id.</u>

In fact, the Complaint asserts a motivation for the search that seems incompatible with

any plausible municipal custom or policy–that the individual officer engaged in the particular

search as a "homosexual harassing 'come-on.'"  (Doc. No. 1, ¶ 25.)  Plaintiff elaborates that he

> believes that as a result of his lowly status as a black male in a society that has
> low regard for minorities, Deputy Hellerud was emboldened to act out his
> homosexual fantasy on the false premises that Njaka would be so intimidated by

> the physical isolation of the incident, and shielded by the authority vested in his badge as a law enforcement officer, to boldly make homosexual advances with impunity.

(Id. ¶ 26.)  Having plead this theory for Deputy Hellerud's motivation for conducting the particular search at issue, Plaintiff's Complaint cannot be read to plead a plausible theory that the municipalities had a different policy or custom on which a plausible Monell claim could be premised.  Cf. Bell Atlantic Corp., ___ U.S. at ___, 127 S. Ct. at 1970-73 (holding antitrust complaint alleging Section 1 conspiracy should be dismissed where it plead only parallel conduct, not the requisite conspiracy).  Accordingly, the county is entitled to be dismissed with prejudice.[15]

### C.    The City of Rockford and Douglas Duda Are Entitled to Dismissal

Defendants City of Rockford and its employee Douglas Duda also move to dismiss, claiming that Plaintiff has failed to state a claim for which relief can be granted because Plaintiff "has offered absolutely no legal or logical basis for his belief Mr. Duda's actions translate into a legal claim."  (Mem. at 4.)[16]

---

[15]  As noted above, the Court finds that Plaintiff's allegations that Deputy Hellerud conducted the search at issue based on some "homosexual fantasy" are implausible.  See supra note 12.  But that is Plaintiff's stated theory and this Court is aware of no obligation to permit Plaintiff leave to replead by deleting those original allegations–that are inadequate to state a claim for municipal liability under Monell–and then replace them with an entirely different, much less inconsistent, policy or custom.  Cf. 5B Wright and Miller, Federal Practice and Procedure § 1357, at 703-04 (3d ed. 2004) (explaining that valid basis for dismissal is largely confined to situations where the plaintiff's allegations plead "himself or herself out of federal court").  This is thus not a case where the plaintiff offered no factual allegations as to the basis of the individual official's conduct, such that an amended complaint could merely add such allegations so as to support a Monell claim.  Rather, Plaintiff has included allegations as to why Deputy conducted the search and those particular allegations could not support a Monell claim.

[16]  Defendants also contend that the Complaint should be dismissed under Rule 12(b)(1) for lack of federal subject matter jurisdiction, although without any clear explanation of their jurisdictional argument.  (Mem. at 1, 3, 7.)  The Court notes that the conclusion that the facts alleged do not support a civil rights claim does not amount to a jurisdictional determination that

Although the parties disputed some of the facts at the oral argument on this matter, it remains clear that Mr. Duda engaged in no actions or statements that could give rise to a civil rights claim. Although their initially-congenial encounter soon deteriorated, Mr. Duda at most: (1) asked what Plaintiff was doing near the treatment plant; (2) informed Plaintiff that he was trespassing on private property; and (3) called the police to report what he viewed as suspicious behavior of Plaintiff. (Doc. No. 1, ¶¶ 8-19.)

Even assuming the truth of these facts as alleged, they provide no basis for a Section 1983 action alleging any form of civil rights claim against Mr. Duda. Nor would the fact that Mr. Duda called the authorities to report his suspicions about Plaintiff support a Section 1985 claim for conspiracy between Mr. Duda and any of the other Defendants (or anyone else), at least not on the facts as alleged here.

### D.    There Is No Basis To Amend The Complaint

Plaintiff also seeks to amend his Complaint to add numerous additional claims and Defendants. (Doc. No. 19.) Plaintiff's original Complaint formally denominated two Counts against four Defendants. He now seeks leave to file an Amended Complaint that enumerates thirteen counts and adds three new individual Defendants. Plaintiff seeks to add as Defendants (1) Deputy Melissa Lauer, the other officer that investigated and detained Plaintiff, (2) Lt. Hagerty, the officer assigned to investigate Plaintiff's administrative complaint about the stop, and (3) Sheriff Gary L. Miller, the Sheriff of Wright County.

He also seeks to greatly expand his Complaint from two to thirteen counts, adding

---

the Court lacks federal subject matter jurisdiction. Because the Complaint purports to assert claims for violation of federal civil rights statutes, federal question jurisdiction is plainly established. But that is a different question from the issue of whether the Complaint fails to state claims for relief under those statutes.

federal-law causes of action for (1) several Section 1983 claims (Counts I-V), and (2) Section 1985 and 1986 conspiracy claims (Counts VI &VIII), as well as state-law claims of (1) obstruction of justice (Count IX), (2) intentional and negligent infliction of emotional distress (Counts X & XI), and (3) "negligent supervision, hiring, training discipline and retention" (Count XII).[17]

Generally, after a responsive pleading has been served, a party may amend its complaint under Rule 15 "only by leave of court," but "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  "Although it is well settled that leave to amend should 'be freely given when justice so requires,' Fed. R. Civ. P. 15(a), permission to amend may be withheld if the plaintiff does not have at least colorable grounds for relief, or if she is guilty of undue delay, bad faith, dilatory motive, or if the permission to amend would unduly prejudice the opposing party."  Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 224 (8th Cir. 1994).

"Good reason to deny leave to amend exists if amendment would be futile."  Williams v. Little Rock Municipal Water Works, 21 F.3d 218, 225 (8th Cir. 1994).  Denying leave to amend on the ground of futility "means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion."  In re Senior Cottages of America, LLC, 482 F.3d 997, 1001 (8th Cir. 2007).

Although there is no heightened pleading standard for civil rights actions, a Complaint must still allege "enough facts to state a claim for relief that is plausible on its face."  Bell Atlantic Corp., ___ U.S. at ___, 127 S. Ct. at 1974.  To survive a motion to dismiss, a plaintiff

---

[17]  Count XIII of the proposed Amended complaint is essentially identical to Count II of his original Complaint.  Counts I-V of the proposed Amended Complaint, all alleging various Section 1983 claims, are apparently intended to supersede Count I of his original Complaint.

must at a minimum "nudge" the claims "across the line from conceivable to plausible."  <u>Id.</u> at

___, 127 S. Ct. at 1974.  The "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do."  <u>Id.</u> at ___, 127 S. Ct. at 1964-65.  Thus, the "[f]actual allegations

must be enough to raise a right to relief above the speculative level."  <u>Id.</u>

Here, Plaintiff's proposed additional claims are entirely speculative and simply not

plausible.  At bottom, the facts as alleged in both Plaintiff's original Complaint as well as his

proposed Amended Complaint are sufficient to state a Section 1983 claim against Deputy

Hellerud, but nothing more.

In his proposed Amended Complaint, Plaintiff alleges that the officers' Incident Report

omits any reference to the "pinching incident" and, in fact, "conceal[s]" the officer's "perverted

actions" simply because the report notes that Plaintiff "was very uncooperative throughout [the

officers'] contact with him."  (Doc. No. 22, ¶¶ 39-40.)  He further alleges that Lt. Hagerty, the

officer assigned to investigate Plaintiff's administrative complaint and who watched the officers'

videotape of the incident with Plaintiff, stated that had he been the investigating officer "he

would have shot [Plaintiff] due to his perceived threat from the 'flinch' response."  (<u>Id.</u> ¶ 41.)

He also alleges that he encountered "further intimidation" while "navigating through the

obstacles erected by Lt. Hagerty" because "Sheriff deputies were stationed on" two local streets.

(<u>Id.</u> ¶ 42.)  Finally, he alleges that he was falsely ticketed for speeding by a deputy who was a

friend of Deputy Hellerud's.  (<u>Id.</u> ¶ 43.)

None of this supports any of the additional claims Plaintiff seeks to add.  There are no

facts that support a plausible claim that Defendants Duda, Hellerud and Melissa Lauer

"conspired to produce a false and misleading "Incident Report" (Count I).  Likewise, there are

no facts alleged capable of supporting a plausible claim that those same defendants "conspired to conceal evidence of the March 6, 2005 *sexual assault*" or "conspired to develop a false 'limited reporting protocol'" (Count II).

Count III, purporting to state a Section 1983 claim of municipal liability under <u>Monell</u>, is deficient for the same reasons.  There is no factual basis to support Plaintiff's claims that the "supervisory defendants" (a term which Plaintiff does not define) either (1) "had contemporaneous knowledge" that deputies "were initiating contact during 'pat-down' procedures" and "agreed to, approved, and ratified this unconstitutional conduct," (2) "established a policy or custom encouraging Sheriff deputies and white citizens to target Black People for selective enforcement," (3) "had actual or constructive knowledge that [Lt.] Hagerty did not have the experience or training to direct a complex racial, same-sex sexual abuse criminal investigation; and that he had made statements committing the investigation to a determinative outcome," or (4) "consistently failed to take adequate or meaningful steps to discipline Duda, Hellerud and Lauer, correct their behavior, or terminate their employment" in light of the alleged fact that they "had a documented history of selective and malicious persecution, excessive use of force, manufacturing of false evidence, proclivity for sexual abuse or filing of false allegations or incident reports in their dealings with minorities, in particular, the Black race."  (Doc. No. 22, ¶¶ 66, 70-71, 74 & 79-80.)

In Count IV, Plaintiff alleges "supervisory violations" of Section 1983–that Plaintiff's constitutional rights were violated by the alleged failures of the "supervisory defendants" to supervise the investigation and to train, control and supervise Lt. Hagerty's conduct of the investigation and Mr. Duda's actions.  (Doc. No. 22, ¶¶ 87-89, 94-100, 1-5-111.)  The facts as pled simply do not support any such plausible, as opposed to speculative, claim.

24

In addition, Counts V through VII, each of which alleges a conspiracy under Section 1983, Section 1985 or Section 1986, are meritless.  Count V alleges that Defendants "Miller, Hagerty, Duda, Hellerud, Lauer and the Supervisory Defendants conspired" to "deprive Plaintiff of his constitutional rights by not charging and prosecuting Duda, Hellerud and Lauer on charges of sexual assault and sexual abuse."  (Doc. No. 22, ¶ 118.)  Count VI alleges that the same defendants conspired "for the purpose of impeding, hindering, obstructing and defeating the due process of justice" in Minnesota, "with the intent to deny Plaintiff the equal protection of the laws."  (Id., ¶ 126.)  Count VII alleges that those same defendants conspired "for the purpose of depriving . . . Plaintiff of the equal protection of the laws and of his equal privileges and immunities under the laws."  (Id., ¶ 133.)  Count VIII alleges that the "Supervisory Defendants, Wright County and the City of Rockford had the power to prevent or aid in preventing the commission of the wrongs conspired to be committed by Defendants Miler, Hagerty, Duda, Hellerud and Lauer, and which by reasonable diligence could have been prevented, but they neglected and/or refused to exercise such power."  (Id., ¶ 141.)  There simply is no factual basis to support any plausible claim of a conspiracy here.

Plaintiff's proposed state-law claims–(1) obstruction of justice (Count IX), (2) intentional and negligent infliction of emotional distress (Counts X & XI), and (3) "negligent supervision, hiring, training, discipline and retention" (Count XII)–fare no better.  With respect to intentional infliction of emotional distress, Plaintiff's allegations that Defendants manufactured and concealed evidence, "repeatedly made false, insulting, offensive, and inflammatory statements about Plaintiff calculated to shame, to humiliate, and to produce public condemnation of the Plaintiff," "used the prospect of fear, force . . . fraud, seizure and coercion to cause Plaintiff to submit to sexual conduct," all with "the intent to cause Plaintiff to suffer severe emotional

distress," are factually ungrounded.  (Id., ¶¶ 156-59.)  Nor is there any factual basis alleged to support his claim that Defendants' conduct had the foreseeable consequence "of making Plaintiff and other members of the black race into public pariahs and terrorists, subjecting them to extreme and sustained public obloquy, causing them to endure death threats, taunts, and insults, and subjecting them to assaults by the local, national, and international media."  (Id., ¶ 161.)

With respect to negligent infliction of emotional distress, Plaintiff's allegations that Defendants breached an alleged duty by making public statements concerning the investigation of Plaintiff's claims are also purely speculative.  (Id., ¶¶ 165-67.)  Interestingly, although Plaintiff purports to state a claim for municipal liability–in essence that the municipal defendants had a policy or custom of violating the rights of individuals such as Plaintiff–he also alleges that "[a]t the time Hellerud and Lauer committed the acts and omissions alleged above, they knew or should have known that they <u>violated or departed from</u> Wright County Sheriff's <u>policies</u> and procedures."  (Doc. No. 22, ¶ 169 (emphases added).)

Finally, Count XII, alleging negligence with respect to hiring, training, supervising and disciplining Mr. Duda, Lt. Hagerty and Deputies Hellerud and Lauer, is subject to dismissal for the same reasons.  (Doc. No. 22, ¶¶ 174-78.)  There simply is no factual basis for the claim that, for example, the "Supervisory Defendants" negligently failed to discipline Duda and instead assigned "him to police the streets of Rockford for suspicious character[s]."  (Id., ¶ 174.)

In sum, Plaintiff has plead no factual basis to expand a Complaint regarding a single fortuitous encounter by one individual with two law enforcement officers–which involved a <u>Terry</u> pat-down search but did not result in an arrest or the filing of any charges–into a thirteen-count, seven-defendant conspiracy action.  Because the proposed claims are futile, the Court denies leave to amend the Complaint.  Accordingly, Wright County and Deputy Hellerud's

motion to dismiss the Amended Complaint–which seems to assume that the proposed Amended Complaint has been accepted–is moot.

## III.   CONCLUSIONS

Defendants' responses to Plaintiff's Complaint were timely and thus he is not entitled to default judgment.  With respect to Deputy Hellerud and Wright County, Plaintiff has stated only a Section 1983 claim against Deputy Hellerud.  In addition, Plaintiff has failed to state any valid claim for relief against Mr. Duda and the City of Rockford.  Finally, there is no basis to permit the additional claims of Plaintiff's proposed Amended Complaint.

## IV.   RECOMMENDATIONS

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.     Defendants City of Rockford and Douglas Duda's motion to dismiss (Doc. No. 8) be GRANTED;

2.     Defendants Wright County and Deputy Hellerud's  motion to dismiss (Doc. No. 26) be GRANTED IN PART and DENIED IN PART;

3.     Defendants Wright County and Deputy Hellerud's motion to dismiss the amended complaint (Doc. No. 32) be DENIED AS MOOT;

4.     Plaintiff's motion for default judgment and for leave to amend (Doc. No. 19) be DENIED; and

5.     Plaintiff's motion for entry of default (Doc. No. 39) be DENIED.


Dated:  April 1, 2008

                                                            s/ Susan Richard Nelson

                                                          SUSAN RICHARD NELSON
                                                          United States Magistrate Judge

27

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by April 16, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.